IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ACRADYNE CORPORATION, and<br>AUTOMOTIVE INDUSTRIAL<br>MARKETING CORPORATION (AIMCO),<br>　　　　　　Plaintiffs, | CV. 04-1526-PK (LEAD)<br>CV. 05-688-PK (RELATED)<br><br>OPINION AND ORDER |
| v. | |
| EURO-HERRAMIENTAS, S.A.U.,<br>　　　　　　Defendant. | |

PAPAK, Magistrate Judge:

　　This cause of action involves tools that were sold by plaintiffs to defendant, and which defendant alleges malfunctioned and had to be replaced. In October 2004, Acradyne and Automotive Industrial Marketing Corporation ("AIMCO") filed suit for breach of contract and open account against Euro-Herramientas ("Euro"). In February 2005, Euro filed suit against AIMCO in Michigan for fraud/misrepresentation, negligent misrepresentation, breach of express warranty, and breach of implied warranty of merchantability and fitness for a particular purpose. The case was transferred to this district in May 2005, and the two cases were consolidated in

August 2005. On August 1, 2006, this court heard oral argument on two motions for partial summary judgment filed by Euro, and one motion for partially summary judgment filed by AIMCO. AIMCO also filed motions to strike. This court has jurisdiction pursuant to 29 U.S.C. § 1332. For the following reasons, this court finds that Euro's motion for partial summary judgment on the issue of CE certification is moot, Euro's motion for partial summary judgment as to the metallic composition of the tools is granted, and AIMCO's motion for partial summary judgment on the issue of damages is denied. All motions to strike are denied as moot.

## LEGAL STANDARD

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); Bahn v. NME Hospitals, Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).

The moving party carries the initial burden of proof. The party meets this burden by identifying portions of the record on file which demonstrate the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). Once the initial burden is satisfied, the burden shifts to the nonmoving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Id.

The court must view the evidence in the light most favorable to the non-moving party. Bell v. Cameron Meadows Land Co., 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. Hector v. Wiens, 533 F.2d 429, 432 (9th Cir. 1976). The inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Valadingham

v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989).  Where different ultimate inferences may be drawn, summary judgment is inappropriate.  Sankovich v. Ins. Co. of N. America., 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the non-moving party does have some limit.  The non-moving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Self-serving affidavits will not establish a genuine issue of material fact if they fail to state facts based on personal knowledge or are too conclusory.  Rodriguez v. Airborne Express, 265 F.3d 890, 902 (9th Cir. 2001).  The "mere existence of a scintilla of evidence in support of the [non-moving party's] position would be insufficient."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## FACTUAL BACKGROUND

Acradyne is a wholly owned subsidiary of AIMCO.  AcraDyne manufactures various tools and accessories.  The tools at issue here are advanced technology, electronically-controlled power tools that tighten nuts and bolts to a precise level and are used by industrial and automotive manufacturers.  Euro-Herramientas is a distributor of tools and equipment to various industrial and automotive corporations including Volkswagen, Renault, and Nissan.  For ease, plaintiffs will be referred to as "AIMCO" throughout this opinion, and defendant will be referred to as "Euro".

On or about April 13, 2000, AcraDyne entered into an agreement entitled "Marketing

Partner Agreement" (the "Agreement").[1]  Pursuant to the Agreement, Euro agreed to purchase AIMCO tools for resale and distribution in Spain and other market areas.  Euro purchased tools from AIMCO between 2001 and 2003 for resale to Euro's Spanish customers.  Upon installation, the customers experienced difficulties with the tools.  Euro attempted to perform repairs on the tools, and eventually they were uninstalled and replaced with tools made by Stanley.  Euro alleges that AIMCO misrepresented the tools on several levels, breached the warranty provision of the Agreement by providing tools that failed to perform the functions for which they were designed and purchased, and that Euro suffered damages as a result of the alleged defects in the tools.  In June and July 2006, both parties filed motions for partial summary judgment.  Trial in this matter is scheduled to begin on September 5, 2006.

## ANALYSIS

I.    CE Certification of the Tools

A central allegation of Euro's complaint is that AIMCO sold tools to Euro in 2002 and 2003 with the representation that the tools were "CE certified", a designation that the tools complied with mandatory European product safety standards, when in fact the tools were not CE certified and thus could not legally be sold into Europe.  It is undisputed that AIMCO affixed the "CE" marking to the tools it sold to Euro.  AIMCO's testimonial admissions, internal memos and correspondence cast considerable doubt on the issue of whether the tools were ever CE certified, including evidence that the tools are not CE certified as of this date.  AIMCO expressly denied Euro's Requests for Admission that the tools were not CE certified.  On June 23, 2006, Euro

---

[1] By mid to late 2001, AIMCO was substituted for AcraDyne as a party to the Agreement.

moved for partial summary judgment on the issue of whether the tools AIMCO sold to Euro were CE certified.

On July 31, 2006, one day before oral argument on this motion, counsel for AIMCO emailed the following sentence to counsel for Euro and to this court: "Based on additional information that has come to their attention, AIMCO and AcraDyne concede that the tool systems as built and sold to Euro-Herramientas did not comply with all applicable EEC Directives."  In related correspondence to this court, counsel for AIMCO characterized this email as a concession concerning the CE status of the tools and said he believed this resolved Euro's motion for summary judgment on this issue.

Based on this concession, the court finds that Euro's request for summary judgment is moot as the parties have stipulated and agreed that the tools sold by AIMCO to Euro were not CE certified at the time of sale, and that AIMCO represented that the tools were CE certified.

Under FRCP 37(c)(2), Euro may be entitled to its expenses and attorney fees in connection with AIMCO's denial of the Requests for Admissions on the issue of CE Certification.  AIMCO has requested that the court defer ruling on this matter until after trial.  The court will take Euro's pending motion for sanctions (#125) under advisement.  Euro shall submit its calculation of expenses and attorney fees in connection with preparing for this motion to the court by August 18, 2006.

II.     Metallic Composition of the Tools

Euro's complaint alleges that AIMCO sold tools to Euro with the representation that the tools were made of a superior magnesium alloy that would provide lighter weight, cooler operation, and greater strength and surface hardness.  The word "magnesium" was stamped into

the tools. Metallurgical analysis shows that the tools were in fact made of an aluminum alloy known as "aluminum alloy 535" which contains 92.84% aluminum and approximately 6.8% magnesium. AIMCO argues that the term "magnesium alloy" should be viewed in the context of advertisement and not be read literally. AIMCO asserts that Euro's customers interpreted the term "magnesium alloy" in a common sense, non-scientific manner and were more concerned with the ergonomic properties of the tools. This court is not convinced that caselaw on language permitted in advertising trumps the undisputed fact that AIMCO's tools only contained a small quantity of magnesium yet were marketed as magnesium alloy.

This court finds that at the time of negotiation and sale of the tools to Euro by AIMCO, the tools were not made of a magnesium alloy and/or a magnesium investment casting, and that the tools did not have a magnesium alloy housing. Euro's motion for summary judgment on the issue of the metallic composition of the tools is granted.

III.   Damages

AIMCO argues that Euro seeks damages to which it is not entitled. Specifically, AIMCO argues that Euro may not seek consequential damages which are prohibited under the Agreement, and that Euro may not seek "cover" damages for the cost of replacement tools because cover damages are not available in claims for breach of warranty. AIMCO argues that under the UCC, cover is limited to situations where the buyer rejects the goods or rightfully revokes acceptance. ORS 72.7120. While Euro argued in its response that it timely revoked its acceptance of the tools, that argument was withdrawn at oral argument.

///

///

For clarity, the court notes the following damages alleged by Euro:

a) Cost to replace AIMCO tools with Stanley tools:  $873,605.00
b) Overtime charges for Euro employees who attempted to repair AIMCO tools: $200,200.00
c) Cost to uninstall AIMCO tools and install Stanley tools, including outsourcing some work to third parties:  $209,627.62[2]

As Euro correctly notes, this court must determine as a threshold matter which UCC provision governing a buyer's damages applies here.  AIMCO argues that Euro's only measure of damages is ORS 72.7140(2), the "difference in value" measure, while Euro argues that it should be allowed to utilize ORS 72.7140(1), (2) and (3).  This court agrees with Euro because the measure of damages in subsection (2) "is not intended as an exclusive measure."  See Comment 3 to subsection (2) of ORS 72.7140(2); see also Kelly v. Olinger Travel Homes, Inc., 200 Or. App. 635, 643-44 (2005), rev. denied, 340 Or. 308 (2006) (explaining that a buyer may recover under subsection (1) for breach of warranty); see also Besicorp Group, Inc. v. Thermo Electron Corp., 981 F. Supp. 86, 101 (N.D.N.Y. 1997) (same).

Under subsection (1), a buyer "may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable."  ORS 72.7140(1).  Under subsection (2), "The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."  ORS 72.7140(2).  As

---

[2] The court notes that this figure changed to $212,955.26 at a later point in Euro's briefing. Also, an additional damages claim for battery powered screwdrivers is not at issue in this motion.

Page 7 - OPINION AND ORDER

courts have made clear, "[r]ead together, subsections (1) and (2) of § 2-714[3] provide that plaintiff may recover for its direct damages in any manner which is reasonable." Happy Dack Trading Co. v. Agro-Industries, Inc., 602 F. Supp. 986, 993-94 (S.D.N.Y. 1984) (citation omitted). AIMCO's summary judgment request as to the damages claimed for the replacement of AIMCO's tools with Stanley tools is denied.

AIMCO also argues that Euro's damages based on overtime charges for Euro employees who attempted to repair AIMCO tools and the cost to uninstall AIMCO tools and install Stanley tools, respectively b) and c) above, are consequential damages and precluded by the Agreement. Euro asserts that these damages are direct or incidental and, thus, recoverable in this action. The court finds that damages alleged by Euro do not meet the definition of "consequential damages" found at ORS 72.7150(2). Consequential damages are generally lost profits, lost yields or, as in the cases cited by AIMCO, losses that resulted from a secondary contract or agreement and not direct expenses arising from the seller's breach. See, e.g., Petroleo Brasilero v. Ameropan Oil Corp., 372 F. Supp. 503 (E.D.N.Y. 1974). Incidental damages, however, are damages incidental to the breach itself. ORS 72.7150(1); UCC 2-715; see, e.g., Matter of Barney Schogel, Inc., 12 B.R. 697, 719 (S.D.N.Y. 1981) (explaining that the cost of work done on location as a result of defective windows was incidental damages). Thus expenses paid by Euro, including attempts to repair the AIMCO tools and uninstalling those tools, may be direct or incidental damages. See, e.g., Barney Machinery Co. v. Continental M.D.M., Inc., 434 F. Supp. 596, 601 (W.D. Pa. 1977).

---

[3]UCC § 2-714 corresponds to ORS 72-7140. Kelly, 200 Or. App. at 644 n.5 (describing the Oregon's legislature's consideration of the Official Comments to the UCC in adopting this section of the ORS).

As direct or incidental damages, Euro's claims for overtime charges and the costs to uninstall the AIMCO tools and install Stanley tools are not precluded by the limitation on consequential damages.[4]  AIMCO's motion for summary judgment on this issue is denied.

## CONCLUSION

For the foregoing reasons, Euro's motion for partial summary judgment on the issue of CE certification of the tools (#57) is denied as moot.  Euro's motion for costs and fees pursuant to its motion for partial summary judgment on the issue of CE certification of the tools (#125) is taken under advisement.  Euro's motion for partial summary judgment on the issue of the metallic composition of the tools (#69) is granted.  AIMCO's motion for partial summary judgment on the issue of damages (#65) is denied.   All motions to strike are denied as moot.

Dated this 8th day of August, 2006.

   /s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge

---

[4] Having found that Euro's claimed damages are direct or incidental, this court does not reach the question of whether the warranty contained in the Agreement fails of its essential purpose.

Page 9 - OPINION AND ORDER